# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| PETER MWITHIGA,        ) | |
|            ) | |
|          Plaintiff,      ) | Case No.: 2:18-cv-00768-GMN-CWH |
|     vs.                 ) | |
|                 ) | **ORDER** |
| UBER TECHNOLOGIES, INC.,   ) | |
|                 ) | |
|          Defendant.     ) | |
|                 ) | |

Pending before the Court are Defendant Uber Technologies, Inc.'s ("Defendant") Motion to Compel Arbitration, (ECF No. 10), and Motion for Judgment on the Pleadings, (ECF No. 11);[1] or, in the alternative, Motion to Stay During Pendency of Arbitration, (ECF No. 12). Pro se Plaintiff Peter Mwithiga[2] ("Plaintiff") filed a single Response, (ECF No. 13),[3] to the Motions.  Defendant filed a Reply, (ECF No. 20), and Plaintiff filed a Surreply, (ECF No. 21).

Also pending before the Court is Defendant's Motion to Strike Plaintiff's Surreply, (ECF No. 22), or, in the alternative, Motion for Leave to File a Response to Surreply, (ECF No. 23).  Plaintiff filed a Response, (ECF Nos. 24, 25), and Defendant filed a Reply, (ECF No. 26).

## I.      <u>BACKGROUND</u>

### A.     **Defendant's Uber App and the Underlying Technology Services Agreement**

Defendant is a technology company that offers a smartphone application ("Uber App") to connect people looking for transportation ("riders") to transportation providers ("drivers") looking for riders. (Rosenthal Decl. ¶ 3, ECF No. 10-1).  When drivers seek to use Defendant's

---

[1] Defendant's Motion for Judgment on the Pleadings does not contain legal support or analysis.
[2] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[3] In support of his Response, Plaintiff also filed the Declaration of Christopher Kabogo Nganga, (ECF No. 15).

Uber App to begin connecting with riders, they must enter into the Technology Services Agreement ("TSA") with Defendant's subsidiary, Rasier, or a related entity. (*Id.* ¶ 8). To accept the TSA, a driver must first log on to the Uber App using a unique username (the driver's email address) and password. (*Id.* ¶ 7). The driver personally selects the unique username and password at the time he signs up to use the Uber App, and the driver's account can only be accessed by inputting that unique username and password. (*Id.*).

Once a new driver logs on to the Uber App, he is given an opportunity to review the TSA by clicking a hyperlink presented on the screen within the Uber App. (*Id.* ¶ 9). At the top of this screen, the Uber App states: "TO GO ONLINE, YOU MUST REVIEW ALL THE DOCUMENTS BELOW AND AGREE TO THE CONTRACTS BELOW." (*Id.*). Clicking the link opens the TSA, which can be reviewed by scrolling through. (*Id.*). The driver is free to spend as much time as he wishes reviewing the TSA on his smartphone. (*Id.*). To advance past the screen which contains the link to the document, the driver must click "YES, I AGREE" to the TSA. (*Id.*). Directly above "YES, I AGREE," the Uber App states: "By clicking below, you represent that you have reviewed all the documents above and that you agree to all the contracts above." (*Id.*). After clicking "YES, I AGREE," the driver is prompted to confirm acceptance a second time. (*Id.*). On the second screen, the Uber App states: "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS." (*Id.*). After clicking "YES, I AGREE" a second time, the driver is able to access the Uber App, and the TSA is immediately sent to the driver's "Driver Portal," where the driver can access the TSA at any time. (*Id.*).

As pertinent to this case, the TSA contains an arbitration provision ("Arbitration Provision"), which provides as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute

arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates.

(TSA § 15.3(i), Ex. D to Rosenthal Decl., ECF No. 10-1). It further states in boldface text:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

(*Id.*). Additionally, it contains a delegation clause ("Delegation Clause"), which provides:

> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. . . .

(*Id.*). The TSA then explicitly states:

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and the Company or Uber, as well as all disputes between You and the Company's or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

(*Id.*).

**B.     Factual Allegations and Procedural Background**

Plaintiff alleges that he applied to be a driver for Defendant in January 2016. (Am. Compl. 2:18–20, ECF No. 5).  As part of the application process, Plaintiff accepted the TSA via Defendant's Uber App. (*Id.* 3:5–12, 21:9–12).  However, Defendant ultimately rejected Plaintiff's January 2016 application. (*Id.* 4:20–5:4).

In April 2016, Plaintiff reapplied to be a driver for Defendant. (*Id.* 5:5–7).  Plaintiff alleges that he was not presented with the TSA as part of the application process, and therefore, he did not accept the TSA.[4] (*See id.* 5:23–6:3).  Defendant, however, alleges that Plaintiff was presented with the TSA, and that he accepted it through the Uber App. (Mot. to Compel 3:7–12, ECF No. 10).  Nevertheless, Plaintiff contends that on or about April 8, 2016, he was approved to drive for Defendant. (Am. Compl. 6:4–6).  Plaintiff further alleges that Defendant wrongfully terminated its relationship with Plaintiff on or about February 16, 2018. (*Id.* 9:17–10:10).

On April 26, 2018, Plaintiff commenced the instant action, and on May 7, 2018, Plaintiff filed the instant Amended Complaint, (ECF No. 5).  Plaintiff asserts the following claims against Defendant: (1) detrimental reliance; (2) breach of contract; (3) fraudulent inducement; (4) economic duress; (5) violation of federal minimum wage law; (6) willful violation of the federal Occupational Safety and Health Act; (7) wrongful termination; (8) fraud; and (9) embezzlement. (*See generally* Am. Compl.).

In the instant Motions, Defendant argues that the Court should compel Plaintiff to arbitrate his claims in accordance with the TSA and dismiss Plaintiff's claims with prejudice, or

---

[4] Defendant's affiant explains that any driver "who wishes to use the Uber App to connect with riders must first enter into a Partner Agreement or, *since December 11, 2015,* the 'Technology Services Agreement' ('December 2015 TSA') with Rasier or a related entity." (Rosenthal Decl. ¶ 8) (emphasis added).  As such, it is the Court's understanding that the TSA Plaintiff asserts he accepted in January 2016 and the TSA Plaintiff allegedly accepted in April 2016 contain the same language. (*See id.* ¶¶ 8, 13); (*see also* Resp. 2:13–18, ECF No. 13).

alternatively, stay the case pending the completion of arbitration. (*See* Mot. to Compel 1:20–26). Plaintiff, however, contends that he did not accept the TSA, and that as a result, cannot be compelled to arbitrate his claims. (*See* Resp. 13:7–17, ECF No. 13).

## II. <u>LEGAL STANDARD</u>

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). If a district court decides that an arbitration agreement

is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III.  **DISCUSSION**

The Court will first address Defendant's Motion to Strike.  The Court will then address arguments arising from the January 2016 TSA, followed arguments arising from the April 2016 TSA.  Lastly, the Court will consider the effect of the TSA's Delegation Clause.

### A.    **Defendant's Motion to Strike Plaintiff's Surreply**

In Plaintiff's Surreply, Plaintiff indicates that he "seeks leave of the Court to file this Sur Reply," because Defendant "seems to have abandoned the alleged April 2016 arbitration agreement in favor of the January 2016 arbitration clause that Plaintiff admitted that Plaintiff signed." (Surreply 1:16–19, ECF No. 21).  While the Court does not agree that Defendant "abandoned" its position regarding the April 2016 TSA, the Court does find that Defendant raised new arguments for the first time in its Reply.  As discussed in Part III.B *infra*, Defendant argues that Plaintiff should be compelled to arbitrate his claims because he accepted the TSA in January 2016.

Defendant contends that it addressed the January 2016 TSA in its Reply because Plaintiff discussed it in his Response to the Motion to Compel. (Mot. to Strike 3:11–13, ECF No. 22) ("Uber was merely responding to arguments raised by Plaintiff in his opposition to Uber's Motion to Compel Arbitration.").  However, the Court notes that in Plaintiff's Amended Complaint, Plaintiff's asserts that he accepted the TSA when he first applied with Defendant in January 2016. (Am Compl. 3:5–12, 21:9–12).  Any arguments based on this allegation should have been presented in Defendant's Motion to Compel, and not addressed for the first time in Defendant's Reply. *See, e.g.*, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (providing that courts may disregard arguments first raised in a reply brief because the timing of the

argument deprives the opposing party of the opportunity to respond); *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1090 n.1 (D. Nev. 2013).

The Court finds that considerations of fairness counsel in favor of allowing Plaintiff to address the arguments set forth in Defendant's Reply. Accordingly, for good cause appearing, the Court will consider Plaintiff's Surreply, (ECF No. 21), and deny Defendant's Motion to Strike, (ECF No. 22). Additionally, the Court will grant Defendant's Motion for Leave to File a Response, (ECF No. 23).

### B.    January 2016 TSA

Defendant argues that Plaintiff accepted the TSA in January 2016 and is therefore bound by the Arbitration Provision and Delegation Clause contained therein. (Reply 5:7–8, ECF No. 20). Defendant proffers two theories in an attempt to support its argument. First, Defendant summarily states that the TSA "sets forth the bases upon which it will be terminated—none of which apply here." (*Id.* 5:1–3). As such, Defendant contends that the January 2016 TSA was not terminated and thus compels the arbitration of Plaintiff's instant claims. (*Id.*). However, Defendant fails to explain—and it is not evident to the Court—how *none* of the bases for termination outlined in the TSA apply to the instant facts.

Second, Defendant points to Section 12.3 of the TSA, which states that the Arbitration Provision survives the TSA's termination. Defendant then contends that even if the January 2016 TSA was terminated, "the Arbitration Provision remains in effect regardless and must be adhered to." (*Id.* 5:5–7). Assuming *arguendo* that the Arbitration Provision survived the TSA's termination, Defendant nevertheless does not provide sufficient legal or factual basis to support a finding that the Arbitration Provision necessarily applies to the instant claims.

///

### C.    April 2016 TSA

Defendant argues that the Court should compel arbitration of Plaintiff's claims because, contrary to Plaintiff's assertions, Plaintiff accepted the TSA in April 2016.[5] (Mot. to Compel 3:6–12, ECF No. 10).  As evidence of Plaintiff's acceptance, Defendant provides a declaration from Brad Rosenthal, the head of UberHEALTH Partnerships at Defendant's headquarters, in which Rosenthal explains that drivers cannot use the Uber App to connect with riders without first accepting the TSA. (Rosenthal Decl. ¶ 8, ECF No. 10-1).  Defendant further provides what it purports to be the electronic receipt of Plaintiff's acceptance based on his unique username and password. (Electronic Receipt, Ex. E to Rosenthal Decl., ECF No. 10-1).  In response, Plaintiff argues that "[a]ll that Defendant can prove is that the 'YES, I AGREE' was allegedly pressed from Plaintiff's phone." (Resp. 7:1–2, ECF No. 13).  Plaintiff further argues that the Court should not consider Rosenthal's declaration because Rosenthal is not competent to testify regarding the matters set forth in his declaration.[6] (*See id.* 11:16–12:19).

Where there is doubt as to whether an agreement to arbitrate exists, "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d at 1141 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).  "[W]hen considering a motion to

---

[5] Defendant additionally argues that this issue should be decided by an arbitrator pursuant to the TSA's Delegation Clause. (Mot. to Compel 7:4–27).  However, "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991).  Here, Plaintiff contests the formation of the agreement.  Accordingly, the Court rejects Defendant's argument.

[6] Plaintiff also makes arguments based on the inconsistent dates Defendant provides as to Plaintiff's acceptance of the TSA in April 2016. (*See* Rosenthal Decl. ¶ 13) (asserting Plaintiff accepted the TSA on April 6, 2016); (*see also* Electronic Receipt, Ex. E to Rosenthal Decl., ECF No. 10-1) (showing date and time stamp for Plaintiff's acceptance as April 7, 2016, 1:06 A.M.)  However, in its Reply, Defendant explains that the date in Rosenthal's declaration, April 6, 2016, is a typographical error, thus, curing any inconsistency between the dates. (Reply at 6 n.5).

compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* "The court cannot require a party to arbitrate a dispute unless the party has agreed to do so." *United Steelworkers of Am v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Here, Defendant's affiant, Rosenthal, explains in detail that in order to use the Uber App to connect with riders, a driver must accept the TSA, not once, but twice. (Rosenthal Decl. ¶¶ 8–10). Moreover, to access the Uber App and accept the TSA, a driver must enter his unique username (the driver's email address) and password, which is selected by the driver. (*Id.* ¶ 7). Rosenthal further explains, that upon a driver's acceptance of the TSA, an electronic receipt is automatically generated, and that "the receipt includes a date and time stamp establishing when the [driver] accepted the agreement." (*Id.* ¶ 12). Thus, Plaintiff's acceptance of the TSA is evidenced by Plaintiff's assertion that he drove for Defendant from April 2016 to February 2018. (*See* Am. Compl. 6:4–6, 9:17–10:10). Indeed, Plaintiff would not have been able to connect with riders unless he first accepted the TSA. Moreover, Defendant provides the electronic receipt generated by Plaintiff's acceptance and Rosenthal explains that "the receipt only could have been generated by someone using [Plaintiff's] unique username and password and hitting 'YES, I AGREE' twice when prompted by the Uber App." (Rosenthal Decl. ¶ 13).

On the other hand, Plaintiff offers little to refute Defendant's evidence. Plaintiff first speculates that someone other than Plaintiff pressed, "YES, I AGREE," from his smartphone. (*See* Resp. 6:14–9:13). Specifically, Plaintiff insists that "if any arbitration clause was signed in April of 2016, then someone at Defendant's office signed the agreement." (*Id.* 3:19–20). Immediately thereafter, however, Plaintiff presents a conflicting argument, stating that the possibility that one of his three children clicked and accepted the TSA "cannot be ruled out in this case." (*Id.* 7:1–8). To be sure, while Plaintiff is adamant that he did not accept the TSA in

April 2016, he provides no evidence that someone else was in possession of his smartphone, that his smartphone was malfunctioning, or that it was otherwise outside his control on April 7, 2016, the acceptance date recorded by Defendant's electronic receipt.

Instead, Plaintiff relies on *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836 (2014), to argue that Rosenthal's declaration does not tell the Court "much other than someone pushed 'YES, I AGREE' from Plaintiff's phone. It does not say whether the signature was the act of Plaintiff or someone else and Plaintiff has provided more than enough facts to prove that someone other that [sic] Plaintiff could have pushed the 'YES, I AGREE.'" (Resp. 8:15–9:13). In *Ruiz*, a California appellate court affirmed a trial court's implicit conclusion that the defendant, Moss Bros., "did not present sufficient evidence to support a finding that [the plaintiff, Ernesto] Ruiz electronically signed" the arbitration agreement at issue. *Ruiz*, 232 Cal. App. 4th at 838. The agreement was about three pages long, and "the phrases 'Ernesto Zamora Ruiz (Electronic Signature)' and '9/21/2011 11:47:27 AM' appear[ed] in print on the third page, under the signature and date lines." *Id.* at 840. The defendant's business manager "summarily asserted that Ruiz 'electronically signed' the [] agreement 'on or about September 21, 2011,' and that the same agreement was presented to 'all persons who seek or seek to maintain employment' with Moss Bros.," but did not explain how such signatures were verified. *Id.* at 839. Ruiz stated in a declaration that he did not recall signing that arbitration agreement and "if he had been presented with an agreement that limited his ability to sue Moss Bros. he would not have signed it." *Id.* at 840. In response, Moss Bros. submitted a second declaration of its business manager stating that, as part of an update to its employee handbook, all employees were required to log into an electronic human resources system and agree to the arbitration agreement. *Id.* at 840–41. The court held that the testimony was insufficient because it did not explain "how she ascertained that the electronic signature on the [] agreement was 'the act of' Ruiz,'" and failed to address whether some other employee could have written

Ruiz's name, and whether the date and time next to the purported electronic signature automatically recorded the actual date and time of signing. *Id.* at 843–44 (citation omitted).

However, the instant case is substantially distinguishable from *Ruiz* because while the defendant in that case failed to provide sufficient evidence that its employees were required to use their unique usernames and passwords to access the human resources system and sign agreements, here, Rosenthal states that Plaintiff's unique username and password were necessary to access the Uber App and accept the TSA. Moreover, Defendant has provided evidence that it was necessary for Plaintiff to accept the TSA in order to begin connecting with drivers. Yet in *Ruiz*, it was not clear whether any consequences would have resulted from Ruiz's failure to sign the arbitration agreement. Further, the timeline in *Ruiz* differs. There, the arbitration agreement was allegedly signed at some point during the course of the plaintiff's employment. But here, the TSA was accepted only hours after Defendant allegedly sent Plaintiff an email informing him that his account was "now active." (Email Correspondence, Ex. 6 to Resp., ECF No. 13) (showing email was sent April 6, 2016, at 1:47 P.M.). The Court does note that the plaintiff in *Ruiz* did not recall signing an arbitration agreement, while in the instant case, Plaintiff is "adamant" that he did not accept the TSA. (Resp. 6:14–15). Nevertheless, the plaintiff in *Ruiz* averred that had he been presented with an agreement limiting his ability to sue the defendant, he would not have signed it. In stark contrast, Plaintiff makes no such assurance and instead asserts that he accepted an identical version of the TSA only months before, in January 2016. (*Id.* 2: 13–16, 3:7–8).

Moreover, the Court finds that Plaintiff's challenges to Rosenthal's qualifications are without merit. Specifically, Plaintiff argues that "Mr. Rosenthal has not told the court what his role at Uber is. All he has said is that he is employed as head of UberHEALTH Partnerships." (*Id.* 11:16–20). However, Rosenthal explains that he has "personal knowledge of the process [drivers] must go through to use the Uber App and the various documents to which they must

assent in order to use the Uber App." (Rosenthal Decl. ¶ 6). Moreover, Rosenthal states that he has worked for Defendant since 2014 and has held many roles during his employment with the company. (*Id.* ¶ 2). Additionally, Rosenthal avers that he has "access to Uber's business records reflecting the identity of [drivers] that use the Uber App. These records are maintained in the regular course of business and are records of a regularly conducted activity." (*Id.* ¶ 6). As such, the Court finds that Rosenthal is sufficiently competent to testify regarding the matters set forth in his declaration.

In sum, Plaintiff has not provided enough evidence to raise an issue of material fact regarding the formation of an agreement to arbitrate. Accordingly, the Court finds that Defendant has sufficiently shown that Plaintiff electronically accepted the TSA in April 2016.

### D. The TSA's Delegation Clause

An arbitration agreement may create an agreement between the parties to submit the threshold question of arbitrability to an arbitrator instead of a court (*i.e.*, a delegation clause). *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement that the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). In such cases, unless the agreement to submit the question of arbitrability is itself challenged, the Court should defer ruling on the gateway questions to the arbitrator. *See id.*

Here, Plaintiff does not specifically challenge the Delegation Clause.[7] Instead, Plaintiff generally addresses the Arbitration Provision, and explains that he "is not alleging that Defendant's arbitration clause does not stand muster under the [FAA]. What Plaintiff is

---

[7] The Ninth Circuit has previously considered a nearly identical version of the instant Delegation Clause and found that its language "clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims except challenges to the class, collective, and representative action waivers . . . ." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). As such, had Plaintiff challenged the Delegation Clause, it is unlikely that Plaintiff would have prevailed.

challenging is that he [accepted] an arbitration clause." (Resp. 13:8–10). Having already determined that no genuine issue of fact exists regarding Plaintiff's acceptance of the TSA and its the Delegation Clause, the Court need not make any further determinations. Any threshold questions as to the validity of the arbitration policy and whether it applies to this dispute must be left to the arbitrator. *See Rent-A-Center*, 561 U.S. at 70.

Accordingly, Defendant's Motion to Compel Arbitration is **GRANTED**. Defendant's Motion for Judgment on the Pleadings and Motion to Stay During Pendency of Arbitration are **DENIED as moot**. Furthermore, Plaintiff's action is **DISMISSED without prejudice**. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining a court has the authority to dismiss an action that is properly suited for arbitration).

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings, (ECF No. 11), and Motion to Stay During Pendency of Arbitration, (ECF No. 12), are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 22), is **DENIED**, and Defendant's Motion for Leave to File Response to Surreply, (ECF No. 23), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's case is **DISMISSED without prejudice**. The Clerk of the Court shall close the case.

**DATED** this __14__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court